IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

|  |  |
|---|---|
| GREEN REVOLUTION COOLING, INC.,<br>        Plaintiff,<br><br>vs.<br><br>RIOT PLATFORMS, INC.,<br>        Defendant. | Civil Action No.: 6:24-cv-152-RP |

### ORDER DENYING PLAINTIFF'S MOTION TO COMPEL (ECF NO. 71) AND RULING ON VARIOUS OTHER DISCOVERY DISPUTES

Before the Court are a number of discovery disputes submitted by Plaintiff Green Revolution Cooling, Inc., ("Plaintiff" or "GRC") and Defendant Riot Platforms, Inc., ("Defendant" or "Riot") (collectively, the "Parties"). On December 10, 2024, the Hon. Robert Pitman entered orders referring any non-dispositive discovery disputes as well as Plaintiff's Motion to Compel [ECF No. 71] to the under undersigned for disposition. On January 8, 2025, the undersigned held a hearing on these disputes. Counsel for GRC, Riot, and non-party Midas Green Technologies, LLC ("Midas"), attended and participated. The Parties positions and the Court's rulings are as follows.

### 1. Riot's Chart: Insufficiency of GRC's Preliminary Infringement Contentions

**Defendant Riot's Position (Requesting Party):**

GRC has accused two different systems of infringing its patents, but has only provided claim charts for one of the accused systems. GRC must provide claim charts for the second accused system. Plaintiff served its preliminary infringement contentions in August per the Court's scheduling order. ECF No. 36. Riot attached a portion of those contentions.

Plaintiff provided claim charts for one accused system, which was provided to Riot by a company called Midas. Plaintiff prepared those claim charts using publicly-available information, including YouTube videos. In its August infringement contentions, Plaintiff also appears to accuse a second system provided to Riot by a different company, namely HashHouse. Riot produced technical documents for the HashHouse system, including engineering drawings, a spec sheet, a user manual, and numerous photos of the HashHouse systems. Riot attached the HashHouse user manual and some of those photos of the HashHouse system. Although Riot produced technical documents and photos, Plaintiff refuses to provide claim charts for the HashHouse systems until after it can perform a site inspection of Riot's facilities.

Riot intends to provide a site visit, but the logistics and timing are challenging. And Plaintiff's delay in providing claim charts is prejudicing Riot as it is inhibiting Riot's ability to understand Plaintiff's infringement theories for one of the two accused systems.

These are preliminary infringement contentions meant to give the defendant notice of Plaintiff's infringement theories. The HashHouse systems are very different from the Midas systems. Riot is entitled to understand Plaintiff's infringement theories as they pertain to the HashHouse systems in order to guide discovery and should have claim charts for the HashHouse system since Plaintiff has had these technical documents and photos for months. Plaintiff has not explained why the technical documents and photos Riot provided are insufficient to provide preliminary claim charts, but instead has merely insisted on scheduling a site visit before providing preliminary infringement contentions for this second system. That is putting the cart before the horse and may lead to inefficiencies. For example, without the claim charts, Riot is unaware of whether there are certain aspects of the accused HashHouse systems that are at issue, and if so, whether Riot can make those aspects of the systems available during a site visit.

*Markman* briefing is coming to a close and the *Markman* hearing is scheduled for January 8. Plaintiff should provide preliminary claim charts for the HashHouse system before any inspection takes place.

**Defendant Riot's Requested Relief:**

Order GRC to supplement their infringement contentions within 5 days of the Court's order by providing claim charts for the accused HashHouse system.

**Plaintiff GRC's Position (Responding Party):**

GRC currently accuses Riot's Rockdale and Corsicana Facilities of infringement. GRC will supplement its claim charts after Riot provides (1) an inspection of these Facilities, and (2) sufficient information from which GRC can provide a supplement. To date, Riot has done neither.

Riot has manufactured this entire issue and the "delay" they complain of. GRC requested a site inspection on October 25, 2024 at least partly to address Riot's concerns. Yet, after 7 weeks of repeated requests, Riot has failed to arrange inspections. The parties are at impasse and GRC will address this issue in a separate dispute chart this week. However, if Riot had provided a Facility inspection, which they've been promising since October 28th, this would be a nonissue.

GRC served its infringement contentions on August 12, 2024. They charted the products in Riot's completed Rockdale Facility and the partially-completed Corsicana Facility. The charts take excerpts from hours of Riot's public video tours of the Rockdale Facility and partially-completed Corsicana Facility. They explain the operation of the Accused Products *in copious detail*, so GRC was able to map those products to the asserted claims in 361 pages of color-coded detail. Riot alleges that these charted products are provided by Midas Green Technologies, LLC ("Midas").

It is unclear what provider has/will provide the remaining products to the Corsicana Facility, but at least Midas and another provider (HashHouse) are in the mix. A 2-minute Corsicana video shows what appears to be Midas product in buildings A1/A2, and an unknown product (likely HashHouse) in building B1. Ex. 11 (Corsicana Video). Apart from the 5-10 seconds showing these products in the background, there is no explanation of what they are, how they work, how the components are connected, how fluid flows through the system, or how miners are placed and removed from the tanks. As such, there is not enough information to chart anything more specific. However, to the extent the layout and operation of the remaining products is the same as those of Midas, they are accused of infringement as set forth in GRC's infringement contentions.

After Riot complained, GRC explained it could not do more without technical information about the HashHouse products. After months of delay, Riot produced a few HashHouse documents on October 25, 2024. These documents do not show how the HashHouse components operate, where they are located, how fluid moves in the system, how the components are connected, how miners are placed and removed from the tanks, or many other elements of the asserted claims. In short, these photos do not solve the problem Riot has created by refusing a site inspection until some unknown, future date. GRC will update its contentions when Riot provides the information necessary to do so.

**Plaintiff GRC's Requested Relief:**

The Court should deny Riot's request and allow GRC to conduct its inspection of Riot's Facilities so that it can supplement its infringement contentions as necessary.

**Court's Ruling:**

The Court **GRANTS-IN-PART** and **DENIES-IN-PART** Riot's requested relief. The Court hereby **ORDERS** that GRC's inspection of Riot's facilities must occur before GRC is required to supplement its preliminary infringement contentions to address the accused HashHouse products. Counsel for both Parties are **ORDERED** to work on the dates for the inspection and other protocols as detailed below. **IT IS FURTHER ORDERED** that within thirty (30) calendar days after the inspections have been completed, GRC must supplement its preliminary infringement contentions to address the accused HashHouse products.

### 2. **GRC's Chart: Riot's Refusal to Provide Dates for Inspection of its Facilities.**

**Plaintiff GRC's Position (Requesting Party):**

GRC accuses Riot's Rockdale and Corsicana Facilities of patent infringement. On October 25, 2024, pursuant to Rule 34(a)(2), GRC served its Requests for Inspection on Riot to examine these Facilities. Although Riot has repeatedly promised to provide dates for the inspections, after seven weeks it has yet to do so. The Requests required Riot to, no later than November 1, 2024, provide a date and time for an in-person inspection of its Rockdale and Corsicana Facilities, and their contents, by GRC's counsel and/or expert witnesses.

The Requests allow for the most direct way of assessing infringement of the Rockdale and Corsicana Facilities. The Facilities are where the infringement takes place and is where each component is placed into its infringing configuration. Because the patent claims also require certain fluid flow within the Facilities, the most direct way of assessing fluid flow is through observation of the Facilities' components in operation. *See* ECF No. 1.

On October 28, 2024 counsel for Riot acknowledged receipt of GRC's Requests and promised to "get back" to GRC with proposed dates for inspection. On November 15, 2024, GRC's counsel informed Riot that no dates for inspection had been provided and requested that Riot

supply dates by November 19, 2024. Riot failed to do so. On November 22, 2024, GRC's counsel again requested that Riot provide dates for inspection. Riot still did not comply. On November 25, 2024, GRC's counsel reiterated its request for inspection dates. Riot again failed to respond.

On December 3, 2024, GRC's counsel proposed multiple dates for a meet-and-confer to discuss, among other things, the scheduling of inspections. Riot's counsel failed to respond until the dates/times had passed. On December 5, 2024, GRC's counsel again requested inspection dates. Riot's counsel replied that "[w]e have discussed the requested site inspection with our client and are waiting to hear back from them regarding dates—we will provide that information once we have [it]."

After seven weeks of repeated requests, Riot has failed to arrange for inspections. And Riot now, for the first time in its pending dispute regarding infringement contentions, has suggested it should not have to allow an inspection until after GRC supplements its infringement contentions. This makes no sense, and is not a basis for denying or delaying legitimate discovery requests that have been pending since October. GRC therefore requests that these inspections move forward in January.

**Plaintiff GRC's Requested Relief:**

Order that Riot is compelled to permit inspection of its Facilities within the month of January and before any supplementation to GRC's infringement contentions.

**Defendant Riot's Position (Responding Party):**

GRC's dispute is premature. Riot has not refused to permit an inspection. Riot will provide a site visit ***after*** GRC provides claim charts for one of the two systems it has accused of infringement. GRC has all the technical documents and photos it needs to, but refuses to provide preliminary claim charts for the HashHouse systems. The claim charts are not only required by the

Court's scheduling order, but also necessary to guide the inspection so that Riot understands what aspects of the HashHouse systems GRC intends to inspect.

GRC's request for Court intervention regarding an inspection is premature. Riot has not refused to permit an inspection. But GRC, as it is obligated to do, must provide preliminary infringement contentions for all of the systems that it has accused of infringement. In this case, GRC has accused systems by two different vendors, Midas and HashHouse. While GRC has provided claim charts for the Midas systems, it has refused to provide claim charts for the HashHouse systems—despite the fact that Riot has already produced photos, user manuals, and technical documents.

GRC's failure to provide adequate infringement contentions has prejudiced Riot because it does not have a fulsome view of the allegations regarding one of the accused systems. Further, GRC is incorrect that an inspection of the systems in-use is the best evidence. Riot has already produced technical documents, engineering drawings, photos, user manuals, and other documents regarding each accused system. Seeing the systems in operation does not add much, if anything, beyond the technical documents.

Additionally, scheduling an inspection and reaching an agreement on its parameters takes time. Notably, GRC has not explained precisely what it wishes to inspect. In its chart, GRC claims that it needs to inspect the systems in operation because that is "the most direct way of assessing fluid flow is through observation of the Facilities' components in operation." However, one cannot actually gauge how fluid is flowing inside of a system while it is in operation. And GRC has other ways of obtaining that same information, such as through videos of the accused systems.

Coordinating a site inspection is a difficult endeavor for scheduling and logistics. The Facilities are in operation, and Riot should not have to disrupt its business to accommodate a mere

sight-seeing tour. Further, GRC has not made any representations regarding how many times it believes it will need a site visit. If this is a one-time visit, then Riot will endeavor to ensure that GRC can see what it needs to see. If GRC believes that it is going to make several visits, that will be an issue. GRC should be limited to, at most, two visits at each facility. And GRC should be required to identify with some detail what it needs to inspect to avoid further disputes.

**Defendant Riot's Requested Relief:**

The Court should deny GRC's request and order it to provide claim charts for the accused HashHouse systems prior to any inspection of Riot's facilities.

**Court's Ruling:**

The Court **GRANTS** Plaintiff GRC's request to compel inspection of Riot's facilities before any supplementation to its infringement contention charts of the HashHouse systems. Accordingly, it is **ORDERED** that:

1) the inspections shall occur at a mutually agreeable time;

2) Plaintiff shall be permitted to inspect any immersion cooling systems on site at Riot's facilities;

3) the inspection is not a deposition and neither Plaintiff nor its expert shall question Riot's employees, however, counsel for Plaintiff may ask reasonable questions to counsel for Defendant who shall confer with Defendant in order to provide such reasonable answers;

4) GRC shall produce all photos and videos taken by its attorneys and expert(s) during the inspection;

5) Plaintiff and its expert shall not interfere with the systems or with Defendant's normal operations of the facilities during the inspection; and

6) the Parties may contact the Court's chambers for guidance if an issue arises during the inspection.

**3.  <u>Plaintiff's Motion to Compel [ECF No. 71] and GRC Dispute Issue Nos. 1-4 (Consolidated)</u>**

**Plaintiff GRC's Position (Requesting Party):**

To get discovery of a party's electronic communications, the ESI Stipulation requires that party to (1) submit a list of 5 search terms and 10 custodians and (2) establish good cause. GRC submitted its 5 search terms and 10 custodians to Riot on November 7, 2024, and filed its Motion to Compel ESI on December 9, 2024, prior to the Court referring all discovery disputes to Judge Derek T. Gilliland. *See* ECF No. 71-4.

In its Motion, ECF No. 71, GRC established the requisite good cause for each of its requested custodians and search terms, summarized here.

Issue No. 1: Riot's Initial Disclosure Witnesses: Lyle Theriot, Ashton Harris, Luis Diaz-Cesar.

Riot declared under penalty of perjury that Lyle Theriot, Ashton Harris, and Luis Diaz-Cesar have "the most knowledge about the Accused Products", ECF No. 43-4, and identified them as having knowledge of the "selection, purchase, installation, and use of the Accused Products." ECF No. 71-6.

Mr. Theriot was Riot's Head of Construction. Mr. Harris is Riot's Head of Technical Operations. And Mr. Diaz-Cesar is Riot's Vice President of Engineering, Procurement, and Construction. These custodians are highly likely to have relevant information that will hit on the Search Terms as outlined below.

Search Terms 1 and 2 will establish when Riot had notice of GRC and its Patents-in-Suit. This information is most likely contained in email as Riot's employees may have become aware of GRC and its patents by sending or receiving emails involving GRC's patents, product information, or website information.

Search Terms 1, 3, and 4 are relevant to damages and secondary considerations. These terms are aimed at identifying pricing negotiations, discounts, benefits, drawbacks, and

installation/operation instructions associated with the Accused Products. Negotiations and explanations of why Riot should select immersion technology are more likely to be contained in emails between Riot and its suppliers rather than non-email documents. This is especially true since Riot purchased the underlying products from suppliers.

Search Term 5 targets Riot's operational parameters associated with the Accused Products, which is relevant to infringement of the particular operational parameters contained in the asserted claims of the Patents-in-Suit.

Each Search Terms is therefore tailored to a case dispositive issue that is unlikely to be discovered through non-email documentation, and the Custodians have either demonstrated their knowledge or been identified by Riot as possessing knowledge relevant to this case.

There is good cause (under Rule 26) to order production of these communications. The Terms and Custodians are specific and narrowly tailored to seek a small volume of information. Riot refused to run these terms to determine the number of hits or make any suggestions to narrow the Terms/Custodians. Good cause also exists because this information likely cannot be obtained from other sources. Finally, good cause exists because this information is important to the case. It goes to at least one case dispositive issue, and at least Theriot is not a Riot employee anymore, does not live in Texas, and is outside the Court's subpoena range. His emails are necessary and reasonable considering he does not have authorized access to his Riot emails or ESI post-employment. *Lashify, Inc. v. Qingdao Lashbeauty Cosmetic Co., Ltd.*, 2024 WL 170781, *1, 9 (W.D. Tex. Jan. 16, 2024) (Gilliland, M.J.).

Finally, the parties' actions to date support email production. Riot has requested emails from nine third-parties, so far. GRC and Midas also engaged in email discovery in a companion case (*Midas Green Technologies, LLC v. Rhodium Enterprises, Inc., et al.*, 6:22-cv-50-ADA).

Issue No. 2. Ghazalah Barman

Ms. Barman is Riot's Head of Mining and former Vice President of Financial Planning and Analysis. She allegedly "overseas [sic] quite a bit of the operation." ECF No. 71-3. In July 2023, she held a call and traded emails with personnel who introduced her to GRC's technology. Ms. Barman also signed a variety of purchase agreements related to the Accused Products in this case. She is therefore likely to have further email about Riot's notice of GRC, its products, and its patents, as well as the pricing, selection, and benefits of the patented technology and the Accused Products. As explained above, each of the Search Terms is targeted to a case dispositive issue and good cause exists to run these Terms against Ms. Barman's communications.

Issue No. 3: Riot's Promotional/YouTube Witnesses: David Schatz, Jason Les, and Kameron Millican.

Riot regularly publishes videos online showcasing Riot employees with intimate knowledge of the Accused Products, including their functionality and benefits (e.g., #EnergizingCorsicana Film, https://www.youtube.com/watch?v=8R7emNfF1rA&t=530s). Mr. Schatz, Mr. Les, and Mr. Millican have all appeared in these videos. It is highly likely that email was an integral part of preparing for these videos, and/or making the claims and providing the details within them. The ESI should contain unique, discoverable information concerning at least the operation of the Alleged Products and benefits of that technology, which goes directly to infringement, secondary considerations, and damages.

Mr. Schatz is also Riot's corporate representative in this case who regularly communicates with Heath Davidson, the highest-ranking employee in Rockdale, and Ashton Harris, over email about the Accused Products.

As explained above, each of the Search Terms is targeted to a case dispositive issue and good cause exists to run these Terms against these custodians' communications.

Issue No. 4: Day-to-Day Operations Witnesses: Heath Davidson, Stephen Howell, Jason Les, and Cody Muldner.

These custodians are responsible for the day-to-day operations at Riot's Rockdale and Corsicana facilities, which house the Accused Products. Mr. Davidson is Riot's Vice President of Operations and essentially runs the Rockdale facility. Mr. Howell is Riot's Chief Operating Officer, and is the person who selects and approves the immersion cooling systems Riot uses, including the Accused Products. Mr. Muldner is the operations manager at Riot Corsicana.

These custodians likely have email related to the operation of the Accused Products, both internally and with third-parties like Midas (who is refusing to produce any discovery) or HashHouse. This includes the claimed temperature limitations present in the '914 Patent at claim 15 (reciting a controller for "maintain[ing] a temperature of the dielectric liquid coolant in the range of about 90°F to about 130°F"). Emails from these Custodians are thus directly relevant to infringement.

As explained above, each of the Search Terms is targeted to a case dispositive issue and good cause exists to run these Terms against these custodians' communications.

**Plaintiff GRC's Requested Relief:**

Plaintiff seeks four orders corresponding to the four issues above:

1) that "GRC has shown good cause exists and Riot must search for and produce email ESI for Lyle Theriot, Ashton Harris, and Luis Diaz-Cesar using GRC's Search Terms";

2) that "GRC has shown good cause exists and Riot must search for and produce email ESI for Ghazalah Barman using GRC's Search Terms";

3) that "GRC has shown good cause exists and Riot must search for and produce email ESI for David Schatz, Jason Les, and Kameron Millican using GRC's Initial Search Terms"; and

4) that "GRC has shown good cause exists and Riot must search for and produce email ESI for Heath Davidson, Stephen Howell, Jason Les, and Cody Muldner using GRC's Search Terms."

**Defendant Riot's Position (Responding Party):**

GRC's dispute chart and its associated motion to compel [ECF No. 71] seek email discovery for 10 custodians using broad, unfocused search terms. Both should be denied for violating the Court's OGP. Further, GRC's dispute chart and motion should be denied on the merits because GRC cannot demonstrate at this early stage of discovery that good cause exists to justify any email discovery, particularly email discovery that is broad and unfocused.

Riot is merely a purchaser of the accused products, not the designer, manufacturer, or seller. Discovery is in its very early stages, and Riot is working on locating additional discovery that GRC has recently requested. So, email discovery is premature.

Importantly, GRC has not articulated that any of the 10 custodians have specific, personal knowledge of some relevant facts that would be found in their emails. Nor has GRC provided reasonably-tailored search terms.

*GRC Violated the Court's OGP*

The Parties filed a joint motion on December 6, 2024 seeking "an order referring all discovery disputes to Judge Gilliland for resolution pursuant to the procedure set forth in Judge Gilliland's [OGP]." ECF No. 69 at 1-2. The Court's OGP does not permit a party to file a motion to compel until ***after*** following this dispute resolution process. But just three days after agreeing

to follow the OGP, GRC filed its motion to compel email discovery. ECF No. 71. The next day, the Court granted the Parties stipulation referring all discovery disputes in this case to Judge Gilliland and requiring the Parties to follow the Court's OGP. Riot asked GRC to withdraw its motion to compel, but GRC refused.

One day after filing its motion to compel, GRC sent this dispute chart to Riot covering the same issues as in its motion to compel. ECF No. 71. Thus, GRC is insisting that Riot respond to both its motion to compel and this dispute chart—even though both cover the same issue. Riot will be responding to the motion to compel on Monday, December 16, 2024 which will apply equally to this dispute chart.

GRC's maneuver violates the letter and the spirit of the Court's OGP, which is designed to streamline discovery disputes. The Court's OGP also has word limits for good reason, but GRC has decide to sidestep those limits by incorporating its motion to compel as part of its discovery dispute chart.

### GRC Cannot Demonstrate Good Cause for Email Discovery

Per the Parties' ESI Stipulation [ECF No. 54], "[n]o Party is required to search for or produce emails unless the Party seeking email discovery has shown that there is good cause for targeted e-mail ESI discovery." ECF No. 54 at 3. Good cause may be shown through "a particular and specific demonstration of fact as distinguished from stereotyped and conclusory statements." *In re Terra Int'l, Inc.*, 134 F.3d 302, 306 (5th Cir. 1998). Good cause for email is shown where the custodian has personal knowledge of relevant activity through her email. *See Entergy Gulf States La., LLC v. La. Generating, LLC*, No. 3:14-cv-00385, 2021 WL 24686, at *4 (M.D. La. Jan. 4, 2021).

GRC has not articulated anything specific that any of the custodians would have in terms of information that is relevant to a specific issue. GRC and Riot have no history, Riot did not design the accused products, and there is no indication that Riot's employees that purchased and managed installation of the accused products have some specific information in their email that would be relevant for this case.

Instead of attempting to demonstrate good cause, GRC has identified 10 witnesses (the maximum under the ESI Stipulation) and seeks broad email search terms.

For example, the accused products in this case are immersion cooling systems provided by HashHouse and Midas. These systems are installed in Riot's facilities in Rockdale and Corsicana. GRC's search terms are little more than the name and types of accused products coupled with their location and basic terms like budget, contract, agreement, purchase, and install. There is nothing narrowly tailored about these search terms.

Search Term 3 asks for: (immersion w/5 cool*) AND (sale* OR offer OR pric* OR discount OR budget OR invoice OR contract* OR agreement* OR benefit* OR advantage* OR compar* OR sav*).

Search Term 4 seeks: (Midas OR Hashhouse OR Hashouse OR "hash house") AND (Rockdale OR Corsicana OR order OR purchase OR install* OR pric* OR sale* OR immersion OR cooling) ("Search Term 4").

These search terms would hit on every email regarding the purchase and installation of the accused devices – even though neither act is relevant. Nor has GRC attempted to explain what issue any of these search terms are directed to. It is merely a fishing exercise for all emails about the accused systems, which is improper. Riot will file its response to GRC's motion to compel on

Monday, December 16, 2024. Riot asks the Court to consider both this dispute chart and Riot's response when deciding this discovery issue.

**Defendant Riot's Requested Relief:**

Riot requests that the Court deny GRC's motion to compel [ECF No. 71] and deny GRC's demand for broad email discovery at this time.

**Court's Ruling:**

The Court **DENIES WITHOUT PREJUDICE** Plaintiff's Motion to Compel [ECF No. 71] and Plaintiff's requests for Email-ESI discovery at this time.  Plaintiff's request for Email-ESI may be re-raised in the future, for example, if a deponent asserts that he or she cannot recall the answer to a question, and there are no documents with that information, but that the answer is likely contained in an email.

**4. Riot's Chart: Interrogatory No. 3 – Claim Charts for Plaintiff's Products that Allegedly Practice the Asserted Patents**

**Defendant Riot's Position (Requesting Party):**

Plaintiff contends that it has a number of its own products that are covered by one or more of the asserted patents. Interrogatory No. 3 asks for claim charts showing how each products practices the asserted patents, but Plaintiff has refused to provide those claim charts. Plaintiff contends that it has made and sold several products that "alone or in combination, are covered by one or more of the Asserted Patents." Riot is entitled to test this assertion through a contention interrogatory asking for claim charts.

Accordingly, Interrogatory No. 3 asked plaintiff that "[i]f you contend that any of GRC's products (e.g., the CarnotJet) has been made in accordance with any claim in the Asserted Patents, then identify each such product (e.g., by name, version number, date, customer, data center facility,

or other identifier) and describe, in a claim chart, how each product satisfies each limitation of each Asserted Claim."

This is a relatively standard contention interrogatory that courts routinely require plaintiffs in patent cases to respond to during discovery. For example, in ordering plaintiff to answer a similar interrogatory, Judge Gilstrap held that "[if] [plaintiff] wishes to rely on its own Embodying Products to the extent it has indicated at trial, then [plaintiff] ought to provide [defendant] with adequate notice of how those products practice the Asserted Claims. *Infernal Tech., LLC v. Microsoft Corp.*, No. 2:18-CV-144-JRG (E.D. Tex. June 28, 2019) (citing *UltimatePointer, L.L.C. v. Nintendo Co., Ltd*., No. 6:11-CV-496-LED, 2014 WL 12521379, at *3 (E.D. Tex. June 4, 2014). Further, the court noted that "[t]his request is not unduly burdensome because [plaintiff] will have to prepare this information for trial in any event, if it wishes to rely on the Embodying Products to the extent stated." *Id.*

This contention is important for several reasons. First, it is the only way that Riot can test Plaintiff's contention that is has practiced its own patents. By putting its own products at issue and claiming that they practice the asserted patents, it is Plaintiff's obligation to demonstrate how they practice the asserted patents, and that can only be done in claim charts. Riot, as the defendant, does not have to accept Plaintiff's assertion here and is entitled to test this contention during discovery. It appears that Plaintiff intends to wait to provide these claim charts with its expert reports. But if permitted to wait until after the close of discovery to show its cards, Plaintiff will be denying Riot the opportunity during discovery to test its assertion. This information is also necessary to guide discovery for damages since Plaintiff's use of its own patents, sales of patented products, profitability of those products, the advantages of those patented products over non-patented products, etc. are relevant to at least Georgia-Pacific factors 8-13.

**Defendant Riot's Requested Relief:**

Order Plaintiff to provide claim charts, on a claim-by-claim basis, for each of its own products that it contends practices the asserted patents.

**Plaintiff GRC's Position (Responding Party):**

Riot's request for claim charts mapping practicing products to the asserted patents is unduly burdensome, premature, seeks attorney-client or work-product information, and/or premature expert discovery.

Riot already has what it needs to challenge GRC's assertion of practicing products: a list of GRC's practicing products as recited in response to Interrogatory No. 3. Much like Riot has not conceded infringement based on GRC's infringement contentions, Riot will also challenge GRC's practicing product contentions regardless of the amount of information GRC provides in response to Interrogatory No. 3. Thus, any further information will have no bearing on Riot's positions in this case, and its request for claim charts is unduly burdensome. *See Leader Techs. Inc. v. Facebook Inc.*, 2009 WL 3021168, at *2 (D. Del. Sept. 4, 2009), at *2 ("it would be ***unduly burdensome*** to require Leader, as the patentee, to produce detailed claim charts showing precisely how its products practice each of the asserted claims.") (emphasis added).

Despite Riot's claim that this is a "relatively standard contention interrogatory" that is "routinely" granted, the case law does not support this conclusion. First, Riot has failed to cite any cases from this jurisdiction where claim charts have been compelled. *Leader Techs*, 2009 WL 3021168, at *2 (denying a similar interrogatory). Moreover, Riot's reliance on Judge Gilstrap's opinion is misplaced. When Judge Gilstrap signed that order, discovery was closing the next week and expert reports were due a couple of months later. Here the parties are not due to complete discovery or expert reports for about nine more months.

There is also a significant amount of case law holding the opposite of Riot's contention. *See, e.g., Beckman Coulter, Inc. v. Sysmex Am., Inc.*, 2019 WL 10250941, *2-3 (N.D. Ill. 2019) (denying motion to compel a claim chart showing where each claim limitation is found in the patentee's products); *Morpho Detection, Inc. v. Smiths Detection, Inc.*, 957 F. Supp. 2d 655, 675 (E.D. Va. 2013); *Ecolab USA Inc. v. Diversey, Inc.*, 2015 WL 2353018, *6 (D. Minn. May 15, 2015); *Sonix Tech. Co. Ltd v. Yoshida*, 2014 WL 11878354, *3 (S.D. Cal Dec. 5, 2014). Thus, Riot's burdensome request is anything but standard.

Lastly, to the extent that such charts are necessary, that information is properly in the purview of technical experts after claim construction concludes. Thus, Riot's request is premature both as to claim construction and as to expert discovery. To conclude, Riot's request should be denied as unduly burdensome, and/or at least denied as premature at this time.

**Plaintiff GRC's Requested Relief:**

Deny Riot's request as unduly burdensome and/or delay any further response until the Court has construed the terms of the asserted patents and GRC issues its expert reports.

**Court's Ruling:**

The Court **DENIES** Defendant's request to compel Plaintiff to provide claim charts for its own products that Plaintiff contends practice the asserted patents at this time, but Defendant may re-raise the issue at a later date.

### 5. Riot's Chart: Damages Contention Interrogatory No. 7

**Defendant Riot's Position (Requesting Party):**

Interrogatory No. 7 asks Plaintiff to describe its damages theories and their factual bases. Plaintiff refused to answer, and instead only identified various forms of discovery that it seeks. Riot is entitled to understand the basics of Plaintiff's damages theories and requests an order

compelling a more detailed response. Interrogatory No. 7 asks Plaintiff to describe its damages theories and the factual bases underlying those theories. Plaintiff objects to answering asserting that it need not do so until expert reports.

In its current response, Plaintiff does not identify its damages theories or any of the factual bases for those theories. Plaintiff merely states that its "damages calculations may be informed by" a number of categories of discovery, such as Defendants' "profits, profit margin, revenues, and costs." This response does not provide Defendant with notice of Plaintiff's damages theories, such as whether it is seeking reasonable royalties, lost profits, or both. Nor does it provide any factual bases supporting those theories. In its initial disclosures, Plaintiff contends that it is seeking lost profits, but that is not listed in its response to Interrogatory No. 7.

As this Court ruled in the *Midas Green Technology v. Rhodium case*, a plaintiff must "generally describe the damages theories sought, together with the factual bases for those theories." More specifically, Plaintiff "at least needs to indicate whether it is seeking lost profits and why, and whether it is seeking a reasonable royalty, sufficient to put Defendants on notice of what [Plaintiff] is seeking and the general basis for it." *Id*.

This information is necessary to guide discovery in this case and is solely in the possession of Plaintiff. Riot and the Court are entitled to know what theories and evidence Plaintiff is relying on so that Riot can challenge that evidence and develop responsive evidence and so the Court can properly rule on the various pending discovery disputes.

**Defendant Riot's Requested Relief:**

Order GRC to supplement their response to Interrogatory No. 7 within 7 days of the Court's order by generally describing the damages theories sought (specifically whether it seeks reasonable

royalty, lost profits, etc.), together with the factual bases for those theories sufficient to put Riot

on notice of what Plaintiff is seeking and the general basis for it.

**Plaintiff GRC's Position (Responding Party):**

GRC did answer. Anything more specific from GRC is premature at this time. Riot asks

GRC to set forth "all factual, legal, and evidentiary bases" for its damages theories, including its

actual damages calculations, *before* Riot/Midas have produced their financials in discovery.

GRC's current response identifies each legal theory of damages it intends to pursue, references

691 pages of financial records that will support GRC's damages theories, and agreed to supplement

its responses as additional information becomes available.

Riot's claims are not true. GRC <u>did</u> respond and did describe its damages theories by:

1) incorporating its forthcoming expert reports;
2) pointing to GRC's initial disclosures, which state that GRC intends to pursue "lost profits or . . . a reasonable royalty";
3) describing that the "damages calculations may be informed by at least Riot's profits, profit margin, revenues, and costs; any valuations/evaluations of comparable technologies performed by or at the request of Riot and/or Midas; and/or any fees, licenses, royalties, or other monetary arrangements paid to/from Riot or Midas for immersion cooling technology" and noting that the information is in Riot and Midas's possession, which they are refusing to produce; and
4) incorporating 691 pages of factual information.

The *Midas* case does not compel anything more at this time. GRC identified it will pursue

lost profits or a reasonable royalty; it provided 691 pages of factual information related to damages;

and it agreed to supplement its response with Riot and Midas comply with their discovery

obligations. Thus, GRC has complied with what the *Midas* case required: "While Plaintiff is not

required to supply a very high level of detail or its complete legal and factual basis for damages,

Plaintiff must at least generally state what it is seeking and the support therefor."

Interestingly, Riot's reliance on the *Midas* case actually proves that Midas has the very

information Riot seeks. GRC requested that information from Midas, and Midas has refused to

provide it. GRC has provided the information available at this time and has already agreed to supplement as additional information is produced, including information from Midas and Riot.

**Plaintiff GRC's Requested Relief**:

Order that: Riot's request to compel GRC to supplement its answer to Interrogatory No. 7 is DENIED.

**Court's Ruling:**

The Court **GRANTS-IN-PART** and **DENIES-IN-PART** Defendant's requested relief. Plaintiff is hereby **ORDERED** to supplement its Response to Interrogatory No. 7 within 10 business days to provide an explanation of which damages theories GRC intends to pursue, along with a reasonable level of specificity as to the bases of those theories.

### 6.  Riot's Chart: Secondary Considerations Interrogatory No. 10

**Defendant Riot's Position (Requesting Party):**

Interrogatory No. 10 asks Plaintiff to identify all secondary considerations Plaintiff contends demonstrate non-obviousness of the Asserted Claims. Plaintiff has refused to provide any details. Riot is entitled to understand Plaintiff's position, including what facts Plaintiff believes apply. Interrogatory No. 10 seeks, in part, the identification of all secondary considerations Plaintiff contends demonstrate the non-obviousness of the Asserted Claims, and an identification of the supporting facts.

Plaintiff has only identified categories of secondary considerations. For example, Plaintiff contends that "[b]efore the conception of the inventions of the Patents-in-Suit, there was a significant, long-felt, latent need for the inventions embodied in these products." Plaintiff also states that "[o]thers failed to develop inventions that would fill this need." Plaintiff then claims that it "was first in the field to do so, and its products were praised by the industry." However,

Plaintiff does not explain what that need was, who failed beforehand, how Plaintiff solved this long-felt need, or how it intends to show that it was "first" to solve this problem.

As this Court ruled in the *Midas v. Rhodium* case, a plaintiff must "generally describe its position regarding secondary considerations and support for the secondary considerations it believes apply." This result makes sense because Plaintiff bears the burden to prove secondary considerations and Defendant is entitled to know what Plaintiff intends to rely on in order to pursue discovery on those matters.

**Defendant Riot's Requested Relief:**

Order GRC to supplement their response to Interrogatory No. 10 within 7 days of the Court's order by generally describing its positions regarding secondary considerations and by identifying the factual support for the secondary considerations Plaintiff believes apply.

**Plaintiff GRC's Position (Responding Party):**

GRC provided a <u>detailed</u> response, which is more than sufficient given the early stages of discovery. Among other things, GRC provided links to 9 public GRC web articles and cited 156 pages of GRC materials from its Learning Center (as recited in response to Interrogatory No. 8, which is incorporated by reference) and identifies specific secondary considerations in a full narrative paragraph. GRC also agreed to supplement its responses as additional information becomes available.

Riot's cite to the *Midas* case cuts against them. There, this Court explicitly overruled a defendant's request to "detail all factual and legal bases" regarding secondary considerations. Instead, this Court ordered the plaintiff to "generally describe its position regarding secondary considerations and support for the secondary considerations it believes apply." *Id*. GRC already

did this with a narrative paragraph of secondary considerations, a citation to 9 web articles, and a citation to 156 pages of additional Learning Center material.

For example, one of the cited web articles (titled "Cold Hard Facts of Immersion Cooling – Part 2") lists 5 immersion cooling "myths" and debunks them. This is one example of the factual bases that support GRC's contention of surprise given the unexpected nature and results of the patented technology. As another example, GRC incorporated its Amended Complaint where it explained over multiple pages how GRC recognized the difficulty in cooling data centers, how it solved that problem, and the industry praise and awards GRC's patented systems garnered in the industry.

GRC has sufficiently answered this interrogatory and, to the extent it learns more information, will timely supplement its response as permitted under the Federal Rules of Civil Procedure.

**Plaintiff GRC's Requested Relief:**

Order that: Riot's request to compel GRC to supplement its answer to Interrogatory No. 10 is DENIED.

**Court's Ruling**:

The Court **GRANTS-IN-PART** and **DENIES-IN-PART** Defendant's requested relief. Plaintiff is hereby **ORDERED** to supplement its response to Interrogatory 10 within 14 days to provide additional detail regarding which parts of its response to Interrogatory No. 8 are responsive to the secondary considerations, and generally, how the information cited to is broken down into various secondary consideration buckets.

7.  **Riot's Chart: Plaintiff's Contentions Regarding the Priority Date of the Asserted Claims (Interrogatory No. 12)**

**Defendant Riot's Position (Requesting Party):**

Interrogatory No. 12 asks Plaintiff to explain its contention regarding the priority date of the Asserted Claims. Plaintiff has refused to fully answer, and instead states that all of the Asserted Claims are entitled to a priority date at least as early as the provisional applications. But Plaintiff also stated that it might rely on an even earlier date based on conception and reduction to practice. But none of that is in its response to Interrogatory No. 12.

Interrogatory No. 12 seeks Plaintiff's contentions regarding the priority date of the Asserted Claims. Instead of explaining its position, Plaintiff merely states that all of the Asserted Claims are "entitled to at least the priority date of August 11, 2008," which is the earliest provisional application. However, Plaintiff has refused to provide claim charts explaining where the claimed elements are found in the provisional applications. This is problematic as Plaintiff bears the burden of proving that the Asserted Claims are supported by these provisional applications. Riot should not be forced to wait until expert reports to understand Plaintiff's position here.

More troubling is the fact that Plaintiff appears to be reserving the right to rely on an even earlier date. In its infringement contentions served in August of 2024, Plaintiff states that it "reserves the right to establish an earlier date of invention based upon actions related to conception and reduction to practice of the claimed inventions." If Plaintiff believes that it has facts supporting an earlier date based on conception and reduction to practice, then it must disclose those facts in response to Interrogatory No. 12 during discovery. Again, this is necessary to guide discovery and for Riot to understand what Plaintiff contends is the earliest priority date and its bases for that contention.

**Defendant Riot's Requested Relief:**

Order GRC to supplement their response to Interrogatory No. 12 within 7 days of the Court's order by (1) identifying whether it is relying on conception and reduction to practice to support an earlier prior date and (2), on a claim-by-claim basis describe how the earlier documents (the provisionals and/or documents showing earlier conception and/or reduction to practice) support the subject matter of the Asserted Claims.

**Plaintiff GRC's Position (Responding Party):**

GRC has answered Interrogatory No. 12: the claims are "entitled to at least the priority date of August 11, 2008" and detailed what documents that is based on. Riot's additional request for a claim chart is unduly burdensome, seeks attorney-client or work-product information, and/or premature expert discovery.

GRC provided the dates and the documents to answer Interrogatory No. 12. Riot's request for a claim chart that describes "how" the documents support an earlier priority date at this early stage and before claim construction is unduly burdensome and premature. Moreover, it isn't what Interrogatory No. 12 seeks. Interrogatory No. 12 asks for a claim chart stating "where" the documents support the priority date, not "how" the documents support the priority date.

Riot fails to point to a single case where a plaintiff has been required to provide a priority date claim chart. In fact, multiple cases dealing with almost identical requests have denied them. *See Finjan, Inc. v. ESET, LLC*, No. 3:17-CV-183, 2018 WL 6075797, at *4 (S.D. Cal. Nov. 21, 2018) (upholding Magistrate Judge's order denying need for a chart with claim-by-claim description and questioning why "such a detailed mapping is required, why the information has to be in this format or explain why the information [it] has already obtained [is] insufficient"); *and Sol IP, LLC v. AT&T Mobility LLC*, 2020 WL 60140, at *2 (E.D. Tex. Jan. 6, 2020) (Payne, M. J.)

(finding *Finjan* persuasive and denying priority chart, too). The Court should do the same here for the same reasons.

Finally, there is nothing "troubling" about a party reserving its right to amend its answers if new information comes to light. That is all GRC has done. GRC has therefore sufficiently answered this interrogatory and, to the extent it learns more information, will timely supplement its response as permitted under the Federal Rules of Civil Procedure.

**Plaintiff GRC's Requested Relief:**

Order that: Riot's request to compel GRC to supplement its answer to Interrogatory No. 12 is **DENIED**.

**Court's Ruling:**

The Court **DENIES** Riot's request to compel GRC to supplement its answer to Interrogatory No. 12. However, if Plaintiff tries to predate the priority date currently stated in response to Interrogatory No. 12, Defendant may challenge that at a later time.

**8.   GRC's Chart: GRC's Third-Party Subpoena to Midas Green Technologies, LLC**

**Plaintiff GRC's Position (Requesting Party):**

Midas supplies some of the Accused Products to Defendant Riot Platforms, Inc. ("Riot"). ECF No. 33, ¶¶ 11, 58. On November 20, 2024, GRC served Midas with a third-party subpoena for documents (the "Subpoena"). Midas served its objections to the Subpoena on December 3, 2024, "object[ing] to the entirety of the subpoena and request for documents" because "[i]t would be highly prejudicial for Midas to search for and produce documents in this [Riot] case" . . . "before discovery even opens in the [Midas] case." Midas asserts that GRC will have access to and "improperly use" documents "to prepare its case in the related litigation, ahead of the scheduled

discovery process," "plac[ing] Midas at a strategic disadvantage." *Id.* Midas reiterated that position on the parties' meet and confer on December 13, 2024.

First, Midas's paranoia should be quelled by GRC's court-ordered and ethical obligations. The Protective Order entered in the Riot case prohibits GRC from using designated material, including those produced by third parties, for any purpose other than the Riot litigation. ECF No. 40 at § 7. Importantly, counsel for Midas negotiated and agreed to the Protective Order in the Riot case in their role as counsel for Riot. GRC even assured counsel during the meet and confer that Section 7 prohibits GRC from doing exactly what Midas alleges. However, Midas's unfounded fear cannot form a basis for failing to comply with its discovery obligations.

Second, it is unclear what information produced in the Riot case would be relevant in the Midas case, or how it would place Midas at a strategic disadvantage. Midas is currently the only party with access to all of this information and is undoubtedly preparing its Midas case with that information in mind. In addition, the Midas case is the third attempt by Midas to enforce its patent, and the second attempt reached pretrial in April 2024. Midas has all of the produced discovery, depositions, expert reports, and pretrial briefing from that prior case at its fingertips now. It is therefore Midas who has a strategic advantage over GRC, not the other way around.

Third, the supplier of the Accused Products should not be able to shield critical discovery in the Riot case because it later decided to lodge a separate lawsuit against GRC. Such an outcome would weaponize lawsuit filings with the strategic goal of stonewalling discovery in a separate lawsuit when protective orders are already designed to prevent exactly this outcome.

**GRC's Requested Relief**:

Require Third-Party Midas to produce non-privileged documents in its possession, custody, and control that are responsive to GRC's Subpoena.

**Midas's Position (Responding Party):**

Background: GRC filed this case against Riot based in part on Riot's installation and use of immersion cooling systems made by Midas. ("*GRC v. Riot*") Midas filed a suit against GRC based on GRC's manufacturing and use of immersion cooling systems that infringe Midas' patents. (*Midas Green Technologies, Inc. v. Green Revolution Cooling, Inc.*, Case No. 6:24-CV-166-ADA, *"Midas v. GRC"*). GRC filed a Motion to Consolidate the two cases, which is pending. *GRC v. Riot* is pending before Judge Pitman, where discovery is open and actively progressing. *Midas v. GRC* is pending before Judge Albright. In *Midas v. GRC* the OGP precludes pre-*Markman* discovery. Midas is a party in *Midas v. GRC,* but not in *GRC v. Riot.*

Subpoena: GRC's subpoena is overbroad and seeks information from Midas that is not relevant to its case against Riot. For example, GRC's Request for Production ("RFP") No. 1 seeks "all discoverable material" in the possession of Midas. GRC RFP No. 2 seeks all nonpublic documents produced in any lawsuit. *Id*. Requests 3-12 seek information related to Midas' knowledge of GRC's patents, which is irrelevant to *GRC v. Riot* because Midas is not a party. *Id*. Thus, GRC's subpoena is facially overbroad and unduly burdensome. *See MetroPCS v. Thomas*, 327 F.R.D. 600, 610 (N.D. Tex. 2018).

Issue: Midas objected to GRC's third party Subpoena on several grounds, including the basis that GRC should seek the information directly from Riot. Riot is Midas' customer, and has access to all the information sought in this subpoena. GRC has not exhausted the discovery it can obtain from Riot. Instead, GRC has opted to seek this discovery from Midas, who is not a party to the *GRC v. Riot* action. Therefore, because GRC can obtain the discovery necessary from Riot without resorting to a third party subpoena, Midas should not be compelled to produce this information.

In its Issue #1, GRC misstates Midas' position. Midas trusts that GRC will abide by the *GRC v. Riot* protective order. Midas' assertion is that GRC propounds this broad subpoena directly to third party Midas to circumvent Judge Albright's OGP in *Midas v. GRC*. Midas and GRC are both bound by Judge Albright's OGP that limits pre-*Markman* discovery. GRC is willfully violating the OGP's discovery limitations in *Midas v. GRC* by seeking discovery relevant only to *Midas v. GRC* directly from Midas in *GRC v. Riot*. GRC will gain a tactical advantage if GRC obtains the subpoenaed documents and is successful in consolidating the *GRC v. Riot* case and the *Midas v. GRC* case, because GRC will then be able to use the information obtained in either case - even though the OGP prohibited it from obtaining it at this stage in the case.

Midas has other objections to the subpoena. Midas reserves the right to assert these in a Motion to Quash if needed but agrees with GRC that this issue should be decided first.

**Midas' Requested Relief:**

Deny GRC's request to compel production of documents on the basis of Issue #1.

**Court's Ruling:**

The Court hereby **OVERRULES** Midas' objections to Plaintiff GRC's Subpoena based on the OGP.

### 9.  Other Disputes

**Court's Directive and Ruling:**

An additional chart was submitted to the Court by Plaintiff on the day of the hearing. Due to time constraints, the Court was not able to reach the matters contained in the chart (GRC's Interrogatories No. 1, 4, 7, 12 and Request for Production No. 22). Accordingly, the Parties are hereby **ORDERED** to meet and confer on the Chart, and if necessary, Plaintiff may resubmit its

chart if the Parties are unable to resolve the issues during the meet and confer, and after Defendant provides a supplemental response, or if it is taking too long to obtain a supplement response.

IT IS SO ORDERED.

SIGNED this 23rd day of January, 2025.

_____
DEREK T. GILLILAND
UNITED STATES MAGISTRATE JUDGE